[Civ. No. 9338.   Third Dist.   Apr. 8, 1958.]

TED MARKOWITZ, Respondent, v. ED I. IKEMOTO, Appellant.

*Assigned by Chairman of Judicial Council.

Colley & Sakuma for Appellant.

Seymour Berger for Respondent.

SCHOTTKY, J.—In 1951, appellant purchased the lease-hold interest in certain premises known as the Alaska Hotel in the city of Sacramento. A new lease was executed between appellant and respondent which provided, in part:

"The LESSEE shall personally occupy said demised premises and shall keep the same in good repair, including all improvements which may hereafter be added, damage by the elements excepted, and shall not make alterations thereon without the written consent of the LESSOR and shall not commit or suffer to be permitted any waste on said premises.

. . . . . . . . . . . . . .

"At the expiration of said term or the sooner determination thereof, the LESSEE shall peacefully quit and surrender possession of said premises in as good condition as reasonable use and wear thereof will permit."

In 1955, appellant moved out of the premises and delivered a notice of rescission to respondent. Respondent thereafter commenced an action against appellant, seeking to recover rent, attorney's fees and damages for breach of the covenant to repair. Appellant filed a cross-complaint seeking a cancellation of the lease and a promisory note executed contemporaneously therewith. The trial court held that appellant had surrendered up possession of the leased premises and that respondent had accepted possession, and ordered that the lease and note be cancelled. The court, however, awarded respondent damages in the sum of $1,376.30 for breach of the covenant to repair. Appellant has appealed from the part of the judgment awarding damages against him.

Appellant's major contention is that the judgment must be reversed because of a finding of the trial court that "during the trial it became necessary to determine the condition of the premises when defendant went into possession, and

the Court finds that no one was able to do so." However, the rule is well settled that all of the findings must be read together and that any uncertainty or ambiguity in the findings must, if possible, be construed in support of the judgment. (28 Cal.Jur.2d, p. 729.) The court made the further finding that "during the course of the trial it became necessary to take an accounting of the necessary items of repairs, material and work done, furnished and performed in order to arrive at the amount of damages suffered by the plaintiff by reason of the failure of the defendant to perform the conditions imposed upon the defendant during his occupancy thereof." The court then proceeded in its findings to detail the various items of repair made to the premises by respondent, amounting to $3,120, and segregated the items and amounts that the court determined were shown by the evidence to have been made necessary by appellant's breach of the covenant to repair. Specifically the court allowed damages in the amount of $440.32 for plumbing supplies and repairs, $506.71 for plaster and paint paid to the plumbing contractor, $158.20 for new locks; $9.36 for new light bulbs, $40 for new electric sockets, and $221.71 for new window glass and replacement of glass in a skylight plus repairs to the skylight. These items totaled $1,376.30. Judgment was rendered in the amount of $1,376.30.

Appellant argues that since respondent had the burden of proving damages and since he could not show the condition of the leased premises at the beginning of the lease, he was not entitled to damages. However, the question that we must determine is whether or not there is evidence in the record upon which the court could base its finding of damages against appellant. It is true that respondent could not state the exact condition of the premises at the beginning of the lease, but we are satisfied that there was ample evidence that it was in fairly good condition at that time. Mr. Markowitz testified that in 1946 he remodeled and repaired the whole building, with complete new wiring, plumbing, painting and other repairs; that in 1948 he inspected the premises and found them in excellent condition, and during the years 1949, 1950, and in 1951 prior to appellant's taking possession he visited the premises, and while he made no inspection of the premises, so far as he could observe they were in good condition. Appellant applied for a permit to occupy the leased premises, and the inspector reported to the health officer that he had made a careful inspection of the premises and recommended that the permit be issued. It is hardly likely that the inspector would have

made such a recommendation if the premises were in anything remotely approaching the condition that the evidence showed they were in when appellant vacated the premises. Appellant's own testimony was that he had owned, leased and operated hotels for years and that he examined the premises carefully prior to purchasing the leasehold interest and personal property for $9,000 and agreeing to pay a rental of $350 per month. As stated by the trial judge in his memorandum opinion:

"The defendant had been in possession approximately four years. It stands to reason that he would not have taken possession of the premises, and to have agreed to keep them in good repair, if the premises had been in such a condition as they were in when he moved out."

Mr. Markowitz testified to what he found as the condition of the premises in August, 1955, after lessee vacated the premises, and Mr. Quillici, an inspector for the Sacramento Health Department, testified to what condition the premises were in after lessee vacated the premises.

Markowitz, whose testimony was corroborated by Quillici, testified that the premises were in very poor condition. He stated:

"Well, they were in very poor condition. All the plumbing throughout, there were sinks and basins throughout where the bottom of the basin was broken, taped together, handles tore off the basins and sinks were dripping and in very poor condition as though not so much from just normal wear and tear but from real abuse. In one particular, that is, there was one sink completely missing, gone right off the wall. The bannisters and rails coming up the stairs, they were loose and torn away in a couple of places. Lathes and plaster was out. There were various rooms had holes in the walls that had been done just sort of pushed or kicked or cut. The paper was all torn and the floor coverings were all broken and there was broken windows. The windows, no shades or curtains, no light globes in the place. It was just pretty much of a mess. . . . All the windows, many of the glasses were completely broken out and there was glass on the floors and none of the windows would work. None were in working condition. There wasn't a shade in the place, occasionally a curtain."

He also testified in detail to other damage.

Appellant offered the testimony of himself, his daughter, and several other persons who testified that the premises were improved by appellant during his occupancy. This testimony

merely created a conflict in the evidence, and evidently failed to impress the trial judge who stated in his memorandum opinion: "The testimony of Ikemoto and daughter was not clear or satisfactory."

While it is true that the burden of proving damages by reason of appellant's breach of the covenant to keep the premises in good repair was upon respondent, we believe that the evidence supports the court's findings that respondent was damaged to the extent of $1,376.30. Appellant relies upon the contention that since respondent could not testify positively and minutely as to the exact condition of the premises at the time of the commencement of the term of the lease, no damages can be awarded. It is true that the rule has been enunciated that in order for a lessor to recover for breach of a covenant to repair, the condition of the premises at the beginning and termination of the lease must be shown and if he does not do so he may not recover. (*Goodyear Fabric Corp.* v. *Hirss,* 169 F.2d 115; *Zoslow* v. *National Savings & Trust Co.,* 201 F.2d 208.) However, it has also been held that where the premises have been surrendered in a damaged condition the plaintiff has proved a prima facie case, and it is incumbent on the lessee, if he would avoid liability, to prove the damage was due to the excepted cause. (*Rustad* v. *Lampert,* 149 Minn. 363 [183 N.W. 843].)

In the instant case we believe the evidence hereinbefore set forth was sufficient to support the conclusion that the damage which was found when the premises were surrendered, such as broken windows, damaged plumbing fixtures, and other items hereinbefore mentioned, was not the result of normal wear and tear and that appellant breached the provision of the lease requiring him to keep the premises and improvements in good repair. The memorandum opinion and the detailed findings show that the trial court weighed the evidence carefully and segregated from the total expenditure of $3,120 by respondent in the repair of the premises the items totaling the sum of $1,376.30 as the amount of damages suffered by respondent because of appellant's breach of the covenant to repair.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.